Good morning. May it please the court. The issue in this appeal is whether the district court committed reversible plane error by requiring Ms. Alvarez to participate in a mental health program as a special condition of supervised release. The court committed plane error because it did not provide sufficient reasons for imposing the program, an issue that I do not believe is in dispute here today, and because the record does not contain sufficient information from which this court could infer that the program is necessary and not more burdensome than necessary to promote the goals of sentencing. The district court did order the condition, right? This isn't like some of those many appeals we've been having lately, where it's the probation officer gets to determine, and some of those get reversed, and some of them get modified, and that sort of thing. So this is the district court said, you must do this. So we don't have that issue, a delegation issue. Correct. No delegation issue. The district court did impose mental health treatment as a condition of supervised release, along with two other conditions. One was that Ms. Alvarez seek drug and alcohol counseling, and the other was that she participate in a program to receive her GED. Those are not contested on appeal. Congress has limited the discretion of courts to impose conditions of supervised release by statute at 18 United States Code 3583D, and specifically, it has limited the court's discretion to impose those conditions where they are reasonably related to the factors set forth in 3553A1, A2, B, C, and D, and where they involve no greater deprivation of liberty than is reasonably necessary to meet the goals of sentencing, and where they are consistent with the policy statement set out by the Sentencing Commission. In this case, I'd like to give the court a spectrum. Three cases that this court has decided in the last year, going on almost two years, with regard to plain error and the appeal of a mental health condition. And those cases are Terrell, Mendoza-Velasquez, and Garcia. Two unpublished cases, Terrell and Garcia, and Mendoza-Velasquez was published. And you think this is like Garcia? I think this is on the other side of Garcia and far away from Terrell. And I say that, Judge, specifically because in Garcia, Mr. Garcia had priors that this court said did not suggest the need for mental health treatment. However, this court remanded the case to the district court for re-sentencing. So this is even worse than Garcia? Correct, because Mrs. Alvarez had no prior criminal history. There was an absolute... And to the PSR, it didn't say anything about needing mental health, did it? Correct. In fact, it said that she reported no history of mental health treatment or emotional issues, and the investigation turned up no history of mental health treatment or emotional issues. But do you object to remanding to allow the court to consider it in the first instance? I... And re-sentencing? I believe that this is one of those cases, Judge, much like Pruden in the Third Circuit, where there's an absolute... where there's... the record's devoid of evidence, and the court should remand the case with an order to vacate the condition. But do we have discretion to send, where this is a plain air situation, to have the court have a do-over? I understand that, Your Honor. We do, don't we? Yes, you do. And that's what we did in Garcia, didn't we? Yes, you did, Judge. And the reason I believe that you did so there is because the record was unclear. Here, I believe the record is clear that there's no evidence from which the court could impose a mental health condition. Specifically, the evidence actually has several instances where the court could have brought up the issue of mental health. For example, on pretrial release, at Record on Appeal, page 22, the pretrial conditions do not indicate that she should seek mental health treatment or even have an evaluation, although there's a space there in the condition where the court could impose that condition. At rearrangement, and at the first sentencing hearing and at the second sentencing hearing, Ms. Alvarez was asked by the court whether or not she had any mental health conditions that prohibited her from going forward in the proceeding, and she said no. At the final sentencing hearing, this is Record on Appeal 147, the court specifically asked whether her mental health condition had changed during the course of proceedings, and she said no. Getting back to the three cases I discussed, that's important because, as this court said in Terrell, where there is evidence that a prescription for something like Xanax had been given in the past, and in that case Mr. Terrell was prescribed Xanax for pretrial anxiety, that that would be sufficient to support a mental health condition. And we have no evidence in this case that Ms. Alvarez ever sought drugs like Xanax, Valium, Soma, or that she was ever prescribed drugs that are used to treat mental health conditions. It seems to me in looking at the transcript, there may be more there than I saw, nothing in the PSR, but her counsel . . . were you counsel at the sentencing? No, Judge. That her counsel said that Alvarez had suffered extreme abuse and trauma in a very short life. I'm not suggesting a light went off in the judge's mind at that, but it seems to me that the concern may well have been there's a lot in her background that could create psychological other problems. But she didn't send her for evaluations, she sent her for treatment, ordered treatment. What do you make of the possible effect of counsel herself, or counsel saying that Alvarez had suffered a lot of mental trauma? Judge, that was in the context of a plea for mercy. The defense attorney was asking for . . . the defense attorney was asking for a probated sentence and for education as a condition of treatment. And there is record evidence that she suffered physical abuse and physical trauma. Her second . . . the father of her youngest child, who was currently incarcerated for capital murder, Ms. Alvarez's friend reported to the probation officer that she'd seen Ms. Alvarez with a black eye. That's not evidence of mental abuse or mental trauma. And there's no evidence about how Ms. Alvarez reacted to that physical abuse and the physical trauma. What's the right way to do this if the district court had been concerned that this record had not been sufficiently developed, or there's a lot in it that made her worried about the psychology of this woman in front of her? Could she have been sent by the district judge for an evaluation before making this sort of ruling? I believe that that's possible. I also believe, Judge, that had there been notice in the pre-sentence report that this would be a possible condition, that this would have been addressed at sentencing. In the pre-sentence report, there's actually notice about the educational condition and the alcohol and abuse condition, but there's absolutely no notice of a possible mental health condition. And isn't that normal that that would be in the PSR, the ones we see, if they need it? I mean, if there's some suggestion of it, it's often in there. I believe so, Judge. It's also sometimes in the confidential sentencing recommendation that a judge receives. That sentencing recommendation is under seal in this case, and it's not been unsealed. To my knowledge, there's no mention of mental health condition in that document. And getting back to your point, Judge Shalfwick, I don't doubt that the judge was attempting to address what she believed was a need. There's evidence that Ms. . . . or not a need, forgive me for saying that, what may have been one of her concerns, the judge's concerns. However, if we look to the Pruden case in the Third Circuit, and if I may just read the last paragraph, where the judge specifically stated on the record that she was . . . that he was imposing the condition for the benefit of the defendant, the court said, We repeat that this conclusion is no reflection on the fairness, integrity, and reputation of the District Court in this case. No one has questioned that the District Court's motivation in imposing the mental health condition was to help Pruden, the defendant, break the cycle of recidivism into which he seems to have fallen. Indeed, we are hesitant to thwart the District Court's attempt to rehabilitate Pruden, but we conclude that the law compels us to do so. And the law here compels the same result on plain error review, where there is no need, no evidence of need for mental health treatment, the court cannot impose it. It affects a defendant's substantial rights because the cost of treatment may be imposed on them. It also is a permanent indication in the record that the defendant requires mental health treatment. And it affects the fourth prong because it implicates significant privacy and autonomy concerns. It imposes a financial cost not just on the defendant, but the state as well. And lastly, there's a potential stigma that's attached to court-ordered mental health treatment. I think there's a fourth factor as well, and that is that it's a policy factor. In today's mental health environment, insurance companies now will have access to this type of information, and this will follow Ms. Alvarez throughout her life when she's seeking what is now government-required medical insurance. Are we at liberty to go back and look at the record and try to see if there's some basis for this imposition, or does Salazar say we're not entitled to go back and try to infer? Well, after Salazar, there was a case where cases have gone back to look at. But Salazar says you can't, and it's a published case. And I believe that where the court fails to articulate the rationale that plain error has been committed and the case should be reversed, vacated. Is this one of those cases, like in Caravaglia, where they were just doing these as a matter of course, or do you think the court actually personally thought there's a problem here because she's got a child that's in this situation and she's got all these issues? It's unclear from the record, Judge. I did note that the mental health condition was sandwiched between the educational condition and the alcohol and drug abuse condition, so it's unclear whether this is something that the judge does in most cases or many cases. But this jurisdiction was not just doing this all the time. You don't know. I do know that of the cases I've discussed, I believe one or two of them are out of the same district court. Okay, because Caravaglia talks about these special conditions in some places, like the Western District was doing certain conditions over and over again, and now they're not, I don't think. But you don't know about this, whether this has just kind of gotten in there as boilerplate even though it's supposed to be individualized. No Judge, I don't. We are asking the court to vacate the condition requiring mental health treatment and to remand in order that the condition be excised from the judgment. May it please the court, Loretta Berry for the United States. There is no clear and obvious error in the mental health special condition because the collective facts in both the PSR and in the sentencing transcript show that the district court complied with the statutory considerations of 3583D. Those considerations are, first, her history and circumstances. Where did the district court say, I'm doing these collective facts and I'm finding that this is appropriate in this context? Where is that in the sentencing? The court did not say it explicitly, but as this court has held in many published opinions where it can be inferred from the record, then you can't infer special conditions after the fact from the record after Salazar. You can infer that at pages 159 and 171, Your Honor, that the court was concerned with the factors of deterrence and protection of the public. And that distinguishes the facts of this case from Garcia and Pruden because here there was a constant dialogue between the district court and this defendant about the facts of her offense. And she was unwilling to truthfully debrief, so much so that at pages 159 to 171, the court stated, I believe that you're incredible. You are very dishonest of the details of the joint transportation offense. She initially denied knowing that there was an alien in the trunk of her car. She was unable to appreciate the ramifications of her offense. She lied to the district court about where her children were while she was committing the offense. So you're saying that based upon dishonesty, we can infer that it's appropriate to order a mental health condition. I'm saying that one of the factors of consideration is deterrence and protection of the public. Deterrence would go toward her inability to appreciate the law and the ramifications of her offense. What does mental health treatment have to do with that? It would enable her, perhaps, to discuss, to understand the ramifications of her offense, to understand that putting someone in a trunk for an hour... Is that in the record at all or are you just summarizing it? It is at pages 159 to 171. That mental health treatment would help her with deterrence? That was a concern that the court had about rehabilitating her. The court said mental health treatment will help in that? The court doesn't have to articulate that specifically on the record. That's correct. Mental health treatment helping with anything. Correct, but as this court has held, where the Fifth Circuit can infer what the reasons were that would support it under plain error review, again, Your Honor, under plain error review here, let's remember that perhaps if it had been brought to the court's attention, the court might have articulated on the record very clearly, but it wasn't brought to her attention. Now, the facts here are consistent with the goal of supervised release, which this court has held in Heredia, Holguin, and in Cothran, that the general goal of supervised release is rehabilitation. So, are you saying for everybody that they could benefit from mental health to get rehabilitated better? No, I'm saying that someone in this case, where her history and circumstances that were described by her own defense counsel to the court as being, my client has suffered extreme abuse and trauma in her short life. Life needs to get mental health counseling in order to it. I think that's an excellent point, Your Honor, because in Garcia and Pruden, that's where they said, no, lots of defendants had a rough childhood and a rough life, but that's where this defendant is distinguishable. She had severe emotional trauma. The father of her first two children was murdered in 2011, and the case remained unresolved. It's not even in the PSR. Oh, that is in the PSR, Your Honor. Yes, it is. No, but she has severe trauma and needs counseling. Well, certainly the court can rely on what her own defense counsel is telling the court at the sentencing hearing, which is exactly what defense counsel told the district court. Can you speak to the Caravaggio point? Are you there? Are you, I don't know if you're there or not, if I was there. Regularly. I'm sorry. The Caravaggio point. Is this a boilerplate condition? No, Your Honor, and I would say to answer that question about why it's not a matter of course and why it's not boilerplate is because the district court spent so much time at the sentencing hearing discussing with her the facts of her offense and discussing whether she was able to appreciate the ramifications of her offense, and I don't have the page cite for the court, but when the court asked her about what did you think was going to happen with your children, she said, I didn't think about it. It didn't occur to me. The fact that— Counsel, at the hearing, did the judge say in light of whatever else had occurred that it would be helpful for, was this said at the hearing, did the judge say that it would be helpful for the woman to go through drug and alcohol treatment? Yes, it did. That was recited. Did she say it would be helpful if I got her into an educational program? In terms of helpful, Your Honor, I think what happened is that the court just recited those conditions. Didn't actually say— In the hearing itself, articulated them. When she had pronounced sentencing. That was the only time. Okay. What I'm trying to get to is mental health, something that was added, whether it's boilerplate or otherwise, in the actual written sentence, never having been mentioned, and the other special conditions had been mentioned. Oh, no. It was all mentioned in the record when the district court orally pronounced sentence, but it was a matter-of-fact statement. You will participate in mental health. You will participate in drug treatment. That's how it was mentioned. It was all— That's the first time mental health appeared. That is correct. But it was at the first time that an educational program or alcohol drug counseling was mentioned. That was also the first time, yes. No, those were mentioned in the PSR. Oh, yes. Sorry. I'm sorry. I was asking them, and I think it was a fair answer to the question, but my colleague is right. It was in the record, at least. But so I'm just trying to think to what extent was this not a fully developed— Well, I think, Your Honor, it wasn't. I think the court's concern really became clear at the sentencing hearing. The court's not forced to rely on the facts in the PSR. The court can conduct its own independent, I guess, investigation of the facts in front of it. And in talking to the defendant at the sentencing hearing is, I think, when it really became clear that this defendant was completely unable to appreciate what she had done, put the community at risk, didn't appreciate that fact. She's getting a relatively short sentence of 18 months. She's getting out in six months from the date of sentencing. And the facts of her past, based on what her counsel said, the facts of deterrence and protection gave the court at least reason to believe that perhaps this defendant, based on what her counsel said, could benefit from at least an evaluation. And when we're talking about mental health treatment, it could even be something like speaking with a social worker or something to that effect. And again, I would not say that under the plain air standard of review, the record is devoid of evidence, especially when the facts of this case are so distinguishable from the facts in Garcia and Pruden. In those cases, there was absolutely no sentencing discussion back and forth between the district court and the defendant who was in front of him at the time. There's certainly no liberty deprivation in this case, Your Honors, because the condition can be modified under the statute, as this court has affirmed in a published opinion in Mendoza, Alaska. That doesn't mean that there is no liberty violation. Just because it can be, that's discretionary. We can use that as a discretionary factor, but that doesn't absolutely cure the problem. Well, if there's any, are you referring to a potential stigma? Is that what you're referring to? The fact that it can be, the fact that you can ask for it to be changed does not say that, well, it's okay then. That's true, but Congress created that remedy within the statute to recognize that it could be modified. I think in this situation, the district court considered all of the facts in the record and was not bound by what was in the PSR. But didn't say that it considered any of the facts related to this point. Because the issue wasn't raised before the court. The court did not have, no one objected to the issue. But the court had a duty, separate and apart from whether anybody objected, to say, I believe these special conditions are appropriate in this case because of X, Y, Z. That's a normal sentencing. I think the court did do that. The court exercised her duty at pages 159 to 171. Okay, we've beaten this horse quite a bit. So I'm not going to argue with you further whether the court said, I believe this condition is appropriate for X, Y, Z reasons. I think it can be inferred from the record, Your Honor. With the fact of the fourth prong, I understand that the shocks to the conscience language is currently before the Supreme Court in Rosales. But I believe that even in the more traditional language of Puckett and Alano, that Alvarez cannot demonstrate that this condition seriously affects the integrity and public reputation of the proceedings, even under the language of the Escalante majority. There's no grave injustice, no grave miscarriage of justice here because of the horrific facts in the PSR that her counsel pointed out to the district court at sentencing. Is it the government's position that there is some new standard called shock the conscience that derives from the dissent in the Escalante case, and that that's a lesser standard and that we're supposed to be using that standard? I think that that language made its way from the Escalante opinion. From the dissent? The Escalante dissent, excuse me, into the panel opinion in Sabora. But that wouldn't apply if it contradicts our en banc panel opinion. That determination is currently before the Supreme Court to reveal the language. Well, that's whether it's appropriate or not, but we would on as a matter of orderliness. That's what the Barbosa opinion held, yes, Your Honor. And we held that. We explained orderliness. Yes, that is true. With respect to any potential stigma, I believe that it is balanced by the general goal of the general goals of supervised release that have been set forth by Congress. Again, under the fourth prong, I respectfully request that the modifiability actually promotes integrity and public reputation of the proceedings, as this court has held in its published opinion in Mendoza-Velasquez, which is the published opinion, as Garcia was not. Are you asking for us to remand for re-sentencing if you are not successful, or do you not want to do over? If we are not successful, I would respectfully request that the court remand for re-sentencing if we're not successful. But again, I do not believe that— What case would you cite that that was appropriate? We did that in the Garcia case. There's no further questions. I respectfully request that the court affirm the judgment. Thank you. Unless the court has a specific question that I could help answer, I have nothing for you. I do. I want you to write the opinion for us from your perspective, but do it orally. What is the narrowest way—my concern in this case, from the government's argument, is that this is a very important area, these special conditions. We have not totally clear law, but it's certainly fairly directive that special conditions should have an explanation from the district judge and should be based on some sort of evidence that's in the record. Mental health condition is in a special category, maybe, maybe not. What is the narrowest way, from your viewpoint, for you to win? Is it just for the absence of any articulation? And then go through the four, you know, plain error standards, but my concern in part is the last thing that your friend on the other side was referring to is the fourth factor of plain error. So is this a special category of condition that makes it more difficult for us to affirm? You were arguing the ramifications of the mental health condition. Is that why—is this in a category by itself a special, special condition? I believe, yes, Judge. Mental health is a very serious issue, and when Congress requires courts to articulate a rationale, specifically with respect to something like mental health, which is a discretionary condition of probation at 183563B, that there should be a basis for need, is what the statute requires. And here, there's no basis for need. This court has found in the past that prior prescriptions for drugs that are prescribed to treat mental health conditions is sufficient to meet the need, but we don't have that here. So I think that if we focus, if the court were to focus on the language of the statute and the need for medical treatment, mental health treatment, psychiatric treatment, psychological treatment, then courts would be careful to send defendants for evaluations, include the suggested condition in the PSR so that it can be fully joined at sentencing. Well, defense counsel needs to be careful, too, and they could raise issues like this. Easy for an appellate court of all the time to reflect, to say things like that. I understand it's not always easy to spot these, but we have put the district judge in a position she didn't need to be in if somebody were to raise this with her, and now we've got to figure out what to do with it on plain error review, but . . . It is incumbent on the district judge to articulate a reason, and so although this is on plain error review, there was no notice. If you look at the last two pages of the sentencing transcript, it appears that Ms. Alvarez and her counsel were more concerned about whether she'd be able to remain free pending designation to care for her children than anything else. There's two pages of back and forth over whether she could do that, and so yes, this is before the court on plain error review. This court has seen cases like this before, but never where a defendant has no criminal history and there's no evidence of need. Thank you. All right. Thank you.